UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA R., <br><br>                          Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI,[1] *Acting Commissioner of Social Security*, <br><br>                          Defendant. | Case No.:  21cv1296-MDD <br><br> **ORDER:** <br><br> 1) **RESOLVING JOINT MOTION FOR JUDICIAL REVIEW;** <br> 2) **VACATING THE COMMISSIONER'S FINAL DECISION; AND** <br> 3) **REMANDING FOR FURTHER PROCEEDINGS** <br><br> [ECF No. 14] |

Juanita R. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's Title XVI application for Social Security Disability Insurance ("SSDI") benefits.

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. She is substituted for her predecessor as Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

(ECF No. 1). The parties filed a Joint Motion for Judicial Review of the Administrative Law Judge's ("ALJ") decision ("Joint Motion"). (ECF No. 14).

For the reasons expressed below, the Court **VACATES** the Commissioner's decision and **REMANDS** the case to the ALJ for further proceedings consistent with this opinion.

## BACKGROUND

SSDI generally entitles an insured to benefits when health impairments preclude the insured from working for 12 months or more. *See* 42 U.S.C. §§ 423(a)(1), (d)(1); 20 C.F.R. § 404.1509. Plaintiff alleges that, following a car accident and other life stressors, she suffered a back injury, anxiety, depression, and finger and toe immobility. (*See* AR at 192).[2] Her employment was terminated on April 23, 2018, and she alleges that she was disabled and unable to work for at least 12 months following that date. (*Id.* at 170). After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an ALJ. An administrative hearing was held on July 6, 2020. (*Id.* at 50–69). Plaintiff appeared without being represented by counsel. (*Id.* at 53). The ALJ took testimony from Plaintiff and from Alan Cummings, an impartial vocational expert. (*See id.* at 50–69). On September 22, 2020, the ALJ issued a decision denying Plaintiff's claim. (*Id.* at 13–28).

Plaintiff filed this action seeking judicial review of the Commissioner's decision to deny her application for benefits. (ECF No. 1). She contends that the ALJ erred in: 1) discrediting Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms; 2) failing to properly

---

[2] "AR" refers to the Certified Administrative Record filed on January 21, 2022. (ECF No. 11).

consider her mental limitations; and 3) concluding, based on the remaining evidence, that her impairments were non-severe. Plaintiff is correct on each point.

## DISCUSSION

### A. Standard of Review

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). A court's review is limited to assessing whether the ALJ applied the correct legal standard and supported his conclusions with substantial evidence. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).

Substantial evidence "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Courts look "to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

This standard does not permit a one-sided search for evidence that would support the ALJ's conclusion if viewed in isolation from the rest of the record. Instead, it requires the ALJ and courts to "consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," and a court "may not affirm by isolating a specific quantum of supporting evidence." *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014); *see also Ahearn v. Saul,* 988 F.3d 1111, 1115

(9th Cir. 2021) (substantial evidence standard requires court to "weigh[] the evidence both supporting and detracting from the agency's conclusion]").

Where the agency's denial of benefits is not supported by substantial evidence or results from application of an incorrect legal standard, a reviewing court may enter a judgment modifying or reversing the Commissioner's decision and it may remand the cause for a rehearing. 42 U.S.C. §§ 405(g), 1383(c)(3).

**B. Summary of the ALJ's Findings**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 23, 2018.  (AR at 18).

At step two, the ALJ found that Plaintiff had the following medically determinable impairments: "lumbago status post motor vehicle accident, sciatica, cervical degenerative disc disease, diabetes mellitus type II, obesity, liver mass right lobe, hyperlipidemia, depressive disorder, and anxiety disorder."  (*Id.* at 18–19).  He then determined that these impairments, individually and in combination, had not "significantly limited . . . [Plaintiff's] ability to perform basis work-related activities for 12 consecutive months." (*Id.* at 19).  Because this finding was fatal to Plaintiff's claim to eligibility for benefits, the ALJ did not proceed to the third or subsequent steps.  (*Id.* at 24).

As relevant to this Order, Plaintiff supported her application for SSDI benefits with her own testimony as to the severity of her symptoms, records of a psychiatric examination conducted by Dmitriy Sivtsov, M.D., and other medical records spanning over two years of mental and physical health care. (AR at 52–63, 275–334; *see generally id.* at 234–49, 335–914).  The ALJ, in evaluating this evidence, found first that:

> [T]he claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the objective medical evidence indicates that the claimant's symptoms improved and stabilized with treatment, including physical therapy, counseling, and medication. Her gait has been repeatedly described as normal. While her mental symptoms have been exacerbated by life stressors, she has not been hospitalized for a mental impairment during the relevant period and her symptoms responded to treatment when she took her medication as prescribed. Her reported daily activities suggest a greater level of functioning than alleged. For example, she can drive, she can shop for groceries, she can prepare her own meals, she takes her daughter to school, she can do household chores, and she has no problem with her personal care.

(*Id.* at 22).

As to Dr. Sivtsov's opinion, the ALJ found:

> [The] opinion is unpersuasive because it is inconsistent with and not supported by the objective medical evidence. His opinion was provided for the claimant's workers' compensations claim and his opinion appears to rely more on the claimant's subjective reports rather than objective findings. Notably, Dr. Sivsov considered test results from his mental status exam of the claimant to be invalid because there was a very high likelihood of random responding (Ex. 1F at 9-11). The objective medical evidence indicates that the claimant's mental symptoms have been exacerbated by life stressors, but her symptoms have generally improved and stabilized with counseling and taking her medication as prescribed. She has not been hospitalized for a mental impairment during the relevant period. In addition, her reported daily activities suggest a greater level of functioning than alleged. For example, she can drive, she can shop for groceries, she can prepare her own meals, she takes her daughter to school, she can do household chores, and she has no problem with her personal care.

(*Id.* at 23–24).

Because he concluded that Plaintiff's impairments were non-severe, the ALJ ruled that Plaintiff was not entitled to SSDI benefits. (*Id.* at 24). The

Social Security Appeals Council affirmed. (AR at 6–8).

## C. Issues in Dispute

The issues in dispute are: 1) whether the ALJ erred in discrediting Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms; 2) whether the ALJ erred by failing to properly consider Plaintiff's mental limitations; and 3) whether the ALJ erred in concluding that Plaintiff did not have a severe impairment or combination of impairments for 12 consecutive months after April 23, 2018.

### 1. The ALJ Failed to Give Specific, Clear and Convincing Reasons for Discrediting Plaintiff's Testimony

The ALJ first erred in finding Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms "inconsistent" and therefore not credible. (AR at 22). An ALJ has limited discretion to disbelieve a claimant's testimony as to the severity of her symptoms. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Where there is objective medical evidence of an impairment which could reasonably be expected to produce "some degree" of the alleged symptoms, an ALJ can discredit such testimony only by either: 1) identifying evidence of malingering; or 2) giving "specific, clear and convincing reasons" for finding the testimony not credible. *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). To be sufficiently specific, the ALJ must "identify *which* testimony she found not credible" and "explain[] *which* evidence contradicted that testimony." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *see also Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001) (ALJ's findings must be "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds") (cleaned up). To be "clear and convincing," a reason for a negative credibility determination must be

supported by substantial evidence in the record. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ found that the objective medical evidence supported the conclusion that Plaintiff suffered impairments that could reasonably be expected to produce some degree of her alleged symptoms. (AR at 22.) He declined to credit Plaintiff's unspecified "statements about the intensity, persistence, and limiting effects of her symptoms," though, for two reasons. First, he found that those statements were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). Second, he indicated that her reported daily activities "suggest[ed] a greater level of functioning than alleged." (*Id.*).

Ninth Circuit precedent required the ALJ to identify specific statements he found not credible; he did not do so. *See Brown-Hunter*, 806 F.3d at 494 (ALJ must "identif[y] *which* testimony she found not credible"). The same precedent required the ALJ to identify specifically the medical evidence that the ALJ claimed to contradict Plaintiff's statements; he did not do so. *See id*. (ALJ must "explain *which* evidence contradicted that testimony"). And it required that the ALJ identify, in the reported daily activities evidence that the he relied on, "such relevant evidence as a reasonable mind might accept as adequate to support [his] conclusion" that she suffered from a severe impairment for a twelve-month period after April 23, 2018; he did not do that, either. *Biestek*, 139 S. Ct. at 1154. Due to these errors, the ALJ's proffered explanations are not "specific, clear and convincing reasons" sufficient to warrant discrediting Plaintiff's testimony.

a. <u>The ALJ Omitted to Identify Specific Testimony He Did Not Find Credible</u>

The ALJ first erred by failing to point to specific statements he found

not credible about the intensity, persistence, and limiting effects of Plaintiff's symptoms. He found only that "the claimant's statements [regarding] her symptoms . . . are not entirely consistent with the medical evidence and other evidence in the record," then proceeded to discuss those statements only as an undifferentiated whole. (AR at 22). The Ninth Circuit has repeatedly found that this language, when presented without further explanation, is "generic . . . boilerplate" that does not rise to the level of a specific, clear and convincing reason to discount a claimant's symptom testimony. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (cleaned up); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014); *Brown-Hunter*, 806 F.3d at 493.

The ALJ in this case did not identify any non-credible statements beyond this general reference to "[Plaintiff's] statements [regarding] her symptoms." (AR at 22). Accordingly, the Court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [Plaintiff's] pain testimony where, as here, the ALJ never identified *which* testimony [he] found not credible." *Lambert*, 980 F.3d at 1277 (quoting *Brown-Hunter*, 806 F.3d at 494); *see also Eldridge v. Berryhill*, No. 17cv497-JLS (BLM), 2018 WL 2357147, at *8 (S.D. Cal. May 23, 2018) ("[V]ague references" to "allegations of disabling limitations" not sufficiently specific), adopted by *Eldridge v. Berryhill*, No. 17cv497-JLS (BLM), 2018 WL 3343099 (S.D. Cal. July 9, 2018).

Because the ALJ failed to identify any specific testimony that he found not credible, he did not offer specific, clear and convincing reasons to discredit Plaintiff's symptom testimony as a whole.

    b. <u>The ALJ Failed to Specify Medical Evidence Inconsistent with Plaintiff's Testimony</u>

The ALJ also failed to identify specific medical evidence that

contradicted Plaintiff's (unspecified) testimony. Before setting Plaintiff's symptom testimony aside, the ALJ must "explain[] *which* evidence contradicted that testimony." *Brown-Hunter*, 806 F.3d at 494. As with general references to a claimant's testimony as a whole, "[p]roviding a summary of medical evidence is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Id.*

Here, the ALJ found that Plaintiff's statements were not "entirely consistent with the medical evidence" and proceeded to summarize the medical evidence:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the objective medical evidence indicates that the claimant's symptoms improved and stabilized with treatment, including physical therapy, counseling, and medication. Her gait has been repeatedly described as normal. While her mental symptoms have been exacerbated by life stressors, she has not been hospitalized for a mental impairment during the relevant period and her symptoms responded to treatment when she took her medication as prescribed.

(AR at 22).

As where the ALJ fails to identify specific contradicted testimony, the Court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [Plaintiff's] pain testimony where . . . the ALJ . . . never explained *which* evidence contradicted that testimony." *Lambert*, 980 F.3d at 1277. The ALJ's summary points to no specific evidence that would enable the Court to review his reasoning. For example, where the decision states that Plaintiff's "gait has been repeatedly described as normal," (AR at 22), the Court cannot determine why the ALJ rejected contrary evidence that Plaintiff "walked with a slow gait and exhibited pain

behavior." (*Id.* at 20). Further medical evidence that Plaintiff's gait was "abnormal" resulting in "[l]imited functional capacity" does not appear to have been considered at all. (*Id.* at 751–52). Nor can the Court evaluate, lacking any specifically identified evidence, whether the "physical therapy, counseling, and medication" successfully "improved and stabilized" Plaintiff's symptoms less than 12 months after the beginning of Plaintiff's disability period, as would be necessary to support a non-severity finding. (*Id.* at 22); *see* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as "inability to engage in any substantial gainful activity . . . for a continuous period of not less than 12 months"). While it may be possible to fill in the blanks in the ALJ's reasoning, doing so would exceed the bounds of the Court's limited review. *See Brown-Hunter*, 806 F.3d at 494 (courts "are constrained to review the reasons the ALJ asserts").

Because the ALJ failed to identify specific medical evidence contradicting any specific statement by Plaintiff, those purported contradictions are not specific, clear and convincing reasons warranting his determination that Plaintiff's symptom testimony was not credible.

> c. <u>Plaintiff's Reported Activities of Daily Living Are Not Specific, Clear and Convincing Reasons to Reject Her Testimony</u>

The ALJ's second set of evidence purportedly contradicting Plaintiff's statements—Plaintiff's reported activities of daily living—also fails to meet the "specific, clear and convincing reasons" standard. In the context of daily activities, that standard requires an ALJ either to: 1) specify the activities and the statements they contradict; or 2) make "specific findings relating to the daily activities' transferability" to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal marks and citation omitted).

As discussed above, the ALJ here failed to identify any specific

statements that Plaintiff's reported daily activities contradict. He also failed to: 1) provide substantial evidence for his characterization of Plaintiff's daily activities; 2) provide substantial evidence for imputing her daily activities in the summer of 2020 to the entire 26-month period preceding her hearing; and 3) consider how her daily activities, accounting for the long periods of rest she needed after performing those activities, could transfer to a work setting.

While the decision specifically identifies the activities that purportedly undermine Plaintiff's credibility, (*see* AR at 22), the record does not support its characterization of those activities or the conclusion that the activities demonstrate that Plaintiff has not had a severe impairment for a twelve-month period after April 23, 2018.

First, the ALJ characterized Plaintiff's testimony and submissions as conceding that she "can do household chores." (*Id*. at 22). But she indicated in her August 14, 2019 Function Report that she could "[n]ot [do] much" in the way of household chores due to "back pain + depression." (*Id*. at 219). Her July 6, 2020 testimony related to household chores was limited to a statement that "[she] do[es] [the laundry], but [her] daughter . . . helps [her] pull out the stuff and pick it up and --." (*Id*. at 60).[3] The ALJ's characterization of this evidence as demonstrating that Plaintiff can do household chores is erroneous.

Second, his reasoning that Plaintiff's ability to cook and shop for groceries is inconsistent with her claim is flawed, too. Plaintiff's evidence indicates that she could "sometimes" prepare "salads or greens" in August 2019, (*id*. at 219), she "just started" cooking a month before her July 2020

---

[3] At this point in the transcript, the ALJ's interruption appears to have prevented Plaintiff from offering further information on tasks she was unable to perform without assistance. (*Id.*).

11

hearing, and, at the time of that hearing, she had "started [grocery shopping], too." *See* 42 U.S.C. §§ 423(a)(1), (d)(1); 20 C.F.R. § 404.1509; (AR at 60).

The ALJ properly characterized these statements as establishing that Plaintiff "[could, in July 2020,] shop for groceries [and] prepare her own meals." (AR at 22). But without more, these facts do not establish his conclusion that Plaintiff did not "have an impairment or combination of impairments that has significantly limited . . . the ability to perform basic work-related activities *for 12 consecutive months.*" (*Id.* at 19 (emphasis added), citing 20 CFR 404.1521 *et seq.* and 20 CFR 416.921 *et seq.*). Plaintiff claims that her period of disability began April 23, 2018, and so her claim required only that she show disability through at least April 22, 2019. (*Id.* at 170.) Her July 2020 statements that she had "just started" cooking around June 2020 and similarly had "started" grocery shopping indicate that she had recently been unable to do those things. (*Id.* at 60.) In other words, this testimony supports, rather than contradicts, her claim to disability through at least April 22, 2019. (*Id.* at 16, 60). Moreover, as the ALJ acknowledges, Plaintiff's "symptoms improved and stabilized" over time. (*Id.* at 22). This finding undermines any inference that, because Plaintiff could perform certain activities in mid-2020, she could perform them in April 2019, too. The ALJ erred in concluding that Plaintiff's reported daily activities conflict with her claim to a period of disability lasting 12 months or longer.

Third, the ALJ also failed to explain how Plaintiff's reported daily activities could transfer to a work setting. (*Id.* at 22). Absent any specific contradiction between a claimant's daily activities and the claimant's statements, the ALJ may use those activities to discredit the claimant's symptom testimony only upon findings that the activities "involv[e] the performance of physical functions that are transferable to a work setting."

*Orn*, 495 F.3d at 639 (internal marks and citation omitted).  But the omission to tie daily activities to the ability to work is particularly glaring here, where Plaintiff testified that she needed to lie down for several hours after sitting or standing for about 45 minutes.  (*Id.* at 60–62; *see also id.* at 252 ("I can't be standing or sitting down for a long time, I have to be laying down. . . If I can get a job laying down I could work.").

Plaintiff's testimony regarding her daily activities does not amount to a specific, clear and convincing reason to discredit her other testimony for three reasons.  First, the decision failed to identify specific statements that the testimony contradicted.  Second, the decision misinterpreted and drew improper conclusions from that testimony. And third, the ALJ omitted to explain how her reported daily activities related to her ability to work.

### d. The ALJ's Errors in Setting Aside Plaintiff's Symptom Testimony Are Not Harmless

The Court must next consider whether the ALJ's error in failing to identify any specific, clear and convincing reason to discredit Plaintiff's testimony was harmless.  "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 494 (citations and internal quotation marks omitted).  The Ninth Circuit finds errors based on failure to provide "specific, clear, and convincing reasons" for rejecting Plaintiff's subjective symptom testimony not harmless "because [they] preclude [courts] from conducting a meaningful review of the ALJ's reasoning." *Id.* at 489, 494–95; *Lambert*, 980 F.3d at 1278; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).  Here, the ALJ's errors in failing to provide specific, clear and convincing reasons for discrediting Plaintiff's symptom testimony preclude meaningful review of the

1  ALJ's reasoning, so they were not harmless.

### 2. The ALJ Improperly Set Aside Dr. Sivtsov's Opinion in Considering Plaintiff's Mental Impairments

The ALJ also erred in considering Plaintiff's mental health impairments. In support of her claim to such impairments, Plaintiff submitted the opinion of Dr. Dmitry Sivtsov, (*see* AR at 275–334), along with her mental health treatment records. (*See, e.g., id.* at 87–91, 106–08, 237–49, 360, 365–66, 426–27, 530–32, 754–56, 797–802, 807–12, 823–24). Dr. Sivtsov concluded that Plaintiff demonstrated "mild to moderate impairment" in activities of daily living, "mild impairment" in social functioning and concentration, and "moderate impairment" in adaptation. (*Id.* at 328).

The ALJ erroneously deemed this opinion "unpersuasive." (AR at 23). When evaluating the persuasiveness of a medical opinion, the agency must consider several factors, giving the greatest weight to two: 1) how well the opinion is supported by objective medical evidence and supporting explanations; and 2) how consistent the opinion is with evidence from other sources. 20 C.F.R. § 404.1520c(c) (identifying five factors for consideration); 20 C.F.R. § 404.1520c(b)(2) (placing greatest weight on supportability and consistency). Under 20 C.F.R. § 404.1520c, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The ALJ applied this standard here, finding that both dominant factors—supportability and consistency—supported the conclusion that Dr. Sivtsov's opinion was not persuasive. (AR at 23). This finding was erroneous as to both factors: the ALJ failed to identify substantial evidence that the opinion was either unsupported or inconsistent with other evidence.

### a. The ALJ Erroneously Deemed Dr. Sivtsov's Opinion Unsupported

The ALJ determined that Dr. Sivtsov's opinion was not well-supported because it "appear[ed] to rely more on the claimant's subjective reports rather than objective findings," in part because "Dr. Siv[t]sov considered test results from his mental status exam of the claimant to be invalid." (AR at 23). In general, an ALJ may disregard a physician's opinion of disability where: 1) the ALJ "properly discount[s]" the claimant's "accounts of [her] symptoms and limitations;" and 2) the physician's opinion is "premised to a large extent" on those accounts. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). The ALJ failed to satisfy either prong of this test.

First, as discussed above, the ALJ did not properly discount Plaintiff's symptom testimony because he failed to give specific, clear and convincing reasons why that testimony was not credible.

Second, even had the ALJ properly discounted that testimony, the rule permitting an ALJ to reject a physician's opinion that is based on self-reports "does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Psychiatric diagnoses "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Id.* Accordingly, "[c]linical interview[s] and . . . mental status evaluation[s] . . . are objective measures and cannot be discounted as a 'self-report.'" *Id.* Here, Dr. Sivtsov's opinion relates to Plaintiff's psychiatric impairments. And while Dr. Sivtsov set aside Plaintiff's results from the psychometric assessment instruments he administered due to a "very high likelihood of random responding,"[4] (AR at 283–84, 326–27), that did not mean

---

[4] Dr. Sivtsov's report emphasizes that "random responding," without more, does not support an inference of "deliberate uncooperativeness." (AR at 285).

that Dr. Sivtsov's conclusions lacked any supporting evidence. Those conclusions relied on a clinical interview of the Plaintiff, (*see id.* at 275 (stating that evaluation included "comprehensive face-to-face interview")), and a review of Plaintiff's medical records. (*Id.* at 276, 288–312). The clinical interview and review of medical records constitute objective evidence on which Dr. Sivtsov could—and did—base his findings. *See Buck*, 869 F.3d at 1049 ("[A] clinical interview and a mental status evaluation . . . are objective measures"); (AR at 324–26 (relying on clinical interview and medical records in reaching diagnosis of Plaintiff)). The ALJ erred in finding that Dr. Sivtsov's opinion was not well-supported because it "rel[ies] more on the claimant's subjective reports rather than objective findings." (AR at 23).

      b. <u>The ALJ Erroneously Deemed Dr. Sivtsov's Opinion Inconsistent</u>

The ALJ's determination that Dr. Sivtsov's opinion was inconsistent with the objective medical evidence and other evidence also lacks support from substantial evidence. Specifically, the ALJ characterized the other evidence as indicating:

> "[T]he claimant's mental symptoms have been exacerbated by life stressors, but her symptoms have generally improved and stabilized with counseling and taking her medication as prescribed. She has not been hospitalized for a mental impairment during the relevant period. In addition, her reported daily activities suggest a greater level of functioning than alleged. For example, she can drive, she can shop for groceries, she can prepare her own meals, she takes her daughter to school, she can do household chores, and she has no problem with her personal care."

(*Id.* at 23–24).

These findings do not establish that Dr. Sivtsov's opinion is inconsistent with the other evidence in the record. They do not address the same subject matter as many of Dr. Sivtsov's conclusions—namely, his findings that Plaintiff suffered from impairment in social functioning, concentration, and

adaptation. (*Id.* at 328). But even where the ALJ's reasons map to Dr. Sivtsov's opinion, those reasons are consistent.

First, Dr. Sivtsov's opinion acknowledged and accounted for the "improve[ment] and stabiliz[ation] in Plaintiff's symptoms with counseling and taking her medication as prescribed." (AR at 24). Although he described Plaintiff as "highly symptomatic with depressive and anxiety symptoms" when unmedicated, (AR at 326), he noted that she had ceased taking medications due to unwanted side effects and so ultimately deemed her "depressed mood" "mild." (*Id.* at 329). This characterization is consistent with medical records indicating that, when taking her medication, Plaintiff's depressive symptoms were "[m]oderate." (*Id.* at 247, 803, 807, 811).

Next, there is no apparent inconsistency between Dr. Sivtsov's opinion and the ALJ's observation that Plaintiff "has not been hospitalized for a mental impairment during the relevant period." (AR at 24). Dr. Sivtsov neither claimed to the contrary nor opined that any hospitalization was necessary. (*See* AR at 275–334).

Nor is there any meaningful inconsistency between Plaintiff's reported daily activities and Dr. Sivtsov's description of her impairment, either. In support of his "mild to moderate impairment" assessment in this category, Dr. Sivtsov explained in March 2019 that: 1) "[Plaintiff] reports that she has stopped cooking due to lack of motivation"; 2) "She does minimal shopping, as she is bothered by crowds"; 3) "She . . . is only able to do minimal housekeeping"; 4) "She can occasionally drive for up to fifteen minutes, but the freeway makes her anxious"; and 5) "She will nap during the day." (AR at 327–28). As discussed above, Plaintiff testified that she began cooking and grocery shopping around June 2020, and that, in July 2020, she was unable to do the laundry without assistance and needed to lie down for several hours

after short periods of standing or sitting.  (*Id.* at 60–62).  These statements are consistent with Dr. Sivtsov's opinion that Plaintiff suffered from "mild to moderate" impairment in her activities of daily living.  (AR at 328).

The ALJ's stated reasons for finding Dr. Sivtsov's opinion inconsistent with the other evidence are incomplete, in that they do not address all of Dr. Sivtsov's relevant findings, and they are not supported by substantial evidence.  The AL erred in finding that opinion inconsistent with the other evidence in the record.

### c. *The ALJ's Error Was Not Harmless*

"An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned*."  Brown-Hunter*, 806 F.3d at 494 (citations and internal quotation marks omitted).  Here, the ALJ erred in evaluating each of the two most important factors for determining the persuasiveness of a medical opinion.  The Court cannot find these errors inconsequential, nor can the Court predict how the agency would proceed if the errors were corrected.  Those errors were not harmless.

### 3. The ALJ Erred in Finding Plaintiff's Impairments Non-Severe

Plaintiff also contends that the ALJ erred in finding her impairments non-severe.  An impairment or combination of impairments may be considered "non-severe" *only* if it causes no more than a "slight abnormality" that has "no more than a minimal effect" on the claimant's ability to do basic work activities.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  A finding of non-severity must be supported by substantial evidence "clearly establish[ing] that [the claimant] did not have a medically severe impairment or combination of impairments." *Id.* at 687.  The substantial evidence standard requires the AL J to "consider the entire record as a whole,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's [ultimate] conclusion." *Garrison*, 759 F.3d at 1009.

Here, the ALJ's errors discussed above—discrediting Plaintiff's testimony and Dr. Sivtsov's opinion—were not harmless. In setting that evidence aside improperly, the ALJ failed to consider the record as a whole, and so his conclusion of non-severity rests on a faulty foundation. *See Garrison,* 759 at 1009 (substantial evidence standard requires ALJ to consider "entire record as a whole"). The ALJ erred in finding Plaintiff's impairments non-severe based on an incomplete record.

This error was not harmless. "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 494 (citations and internal quotation marks omitted). Here, the erroneous finding ended the ALJ's inquiry, and so it was not inconsequential to the ultimate determination, and the Court cannot predict how the ALJ would have resolved the claim in the absence of error.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision denying Plaintiff's SSDI benefit application is **VACATED**. The case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: November 30, 2022

Hon. Mitchell D. Dembin
United States Magistrate Judge